IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERT MORENO-PÉREZ,

Plaintiff

v.                                                    CIVIL 07-1863 (JA)

PEDRO TOLEDO-DÁVILA, et al.

Defendants

OPINION AND ORDER

This matter is before me on the defendants' motion for summary judgment, filed on December 21, 2010.  (Docket No. 147.)  The plaintiff filed his motion in opposition to the defendants' motion for summary judgment on December 30, 2010.  (Docket No. 152.)  For the reasons stated below, the defendants' motion is GRANTED as to Pedro Toledo-Dávila, Diana Marrero-Trinidad, Carmen Bruno-Pabón and José Rivera-Alicea, and DENIED as to defendants Luis R. Márquez-Martínez and Edric Medina-Laureano.

I.  PROCEDURAL BACKGROUND

Robert Moreno-Pérez filed the current action on September 18, 2007. (Docket No. 1.)  He amended his complaint on January 16, 2008.  (Docket No. 3.) The defendants, Pedro Toledo-Dávila, Diana Marrero-Trinidad, Luis R. Márquez-Martínez, Carmen Bruno-Pabón and José Rivera Alicea filed a motion to dismiss on July 31, 2008.  (Docket No. 24.)  The initial motion was denied on August 4,

CIVIL 07-1863 (JA)                              2

2008.  (Docket No. 25.)  The court gave the plaintiff leave to re-file a second amended complaint, which he did on August 12, 2008.  (Docket No. 26.)  The defendants filed their second pre-answer motion to dismiss on October 27, 2008.  (Docket No. 30.)  The court denied this motion and ordered the defendants to file their answer to the plaintiff's amended complaint.  (Docket No. 31.)  They did so on November 12, 2008.  (Docket No. 32.)

The case was referred to me on November 13, 2008 for the initial scheduling conference, which was held on January 7, 2009.  (Docket Nos. 33 & 37.)  The plaintiff requested leave to amend his complaint a third time, on August 11, 2009.  (Docket No. 43.)  I granted this motion on September 4, 2009.  (Docket No. 45.)  The plaintiff filed his third amended complaint on September 11, 2009.  (Docket No. 46.)  The defendants submitted their amended answers to the respective complaints on January 19, 2010 and March 15, 2010.  (Docket Nos. 69 & 86.)

The defendants, Pedro Toledo-Dávila, Diana Marrero-Trinidad, Carmen Bruno-Pabón, Luis R. Márquez-Martínez and José Rivera-Alicea, filed their third motion to dismiss on January 15, 2010.  (Docket No. 60.)  This motion was denied the same day.  (Docket No. 61.)  However the court, *sua sponte*, dismissed Diego Santos-Pabón, Edric Medina-Laureano, FNU Morales and Jane Doe "given [the] lack of service of process, as well as the fact that since 12/16/09 the case was set

CIVIL 07-1863 (JA)                      3

for trial and pretrial and no prior request to extend time for service was filed."
(Docket No. 62.)  The plaintiff filed a motion for reconsideration of this decision
on January 20, 2010.  (Docket No. 77.)  The defendants filed their motion in
opposition on February 5, 2010.  (Docket No. 81.)  The case was referred to me
for all further proceedings on January 19, 2010.  (Docket No. 73.)  I granted the
plaintiff's motion on March 11, 2010, vacating the court's previous dismissal of
defendants Medina and Santos.  Moreno-Pérez v. Toledo-Dávila, 266 F.R.D. 46
(D.P.R. 2010).

        The defendants filed their first motion for summary judgment on October 4,
2010.  (Docket No. 116.)  In response, the plaintiff filed a Rule 56(f) motion,
requesting additional discovery before submitting his motion in opposition.  The
plaintiff alleged that he was "[unable] to adduce facts essential to file [his]
opposition" because of various third parties' failure to comply with "duly served
subpoenas."  (Docket No. 120, at 1.)  The plaintiff requested that I compel
production of these documents.  (Docket No. 120, at 6-7.)  The defendants filed
their opposition to plaintiff's Rule 56(f) motion on October 21, 2010, claiming that
plaintiff was not entitled to the contested documents "after three years of
litigation[.]"  (Docket No. 128, at 4.)  I ordered an in camera inspection of the
contested documents on November 24, 2010, with the scheduled inspection
occurring on December 7, 2010.  (Docket No. 137.)  I made my ruling on these

CIVIL 07-1863 (JA)                         4

contested documents on December 7, 2010, restricting the discovery to some of

the administrative material.  (Docket No. 143.)

Defendants Toledo, Marrero, Márquez, Bruno, Rivera and Medina filed the

present motion on December 21, 2010.  (Docket No. 147.)  The defendants also

filed a motion to withdraw the previously filed motion for summary judgment,

dated October 4, 2010.  (Docket No. 151.)  The plaintiff filed his response in

opposition on December 30, 2010.  (Docket No. 152.)

The plaintiff names the following parties as defendants:  Diego Santos-

Pabón, Edric Medina-Laureano, John and Jane Does C-Z, Pedro Toledo, Luis R.

Márquez-Martínez, Sergeant FNU Morales, Diana Marrero, Carmen Bruno, José

Rivera-Alicea, and Insurance Companies A-Z.  (Docket No. 46, at 1.)   As is

relevant in this motion, Pedro Toledo-Dávila ("Toledo") is the Superintendent of

the Puerto Rico Police Department.  Luis R. Márquez-Martínez ("Márquez") is the

captain-in-charge of the relevant precinct in this case.  Diana Marrero-Trinidad

("Marrero"), Carmen Bruno–Pabón ("Bruno"), and José Rivera-Alicea ("Rivera" and

collectively "Investigatory Officers") are considered "investigatory officers" by the

plaintiff.  Finally, Edric Medina-Laureano ("Medina") is the police officer whom the

plaintiff alleges was involved in his assault.

The plaintiff seeks damages under several theories of liability.  First, he

seeks to enforce his federal rights under 42 U.S.C. § 1983.  The plaintiff claims

CIVIL 07-1863 (JA)                          5

violations of his Fourth and Fourteenth Amendment rights under the statute. (Docket No. 46, at 21-22, ¶¶ 88-93.)   He also brings a claim of supervisory liability against Toledo and Márquez.   (Docket No. 46, at 26-27, ¶¶ 114-18.) Finally, the plaintiff brings a claim for "failure to intervene" against "Jane Does C-Z."  (Docket No. 46, at 22-23, ¶¶ 94-97.)

The plaintiff also brings claims under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.  Under that statute, he alleges assault and battery against Santos and Medina.  (Docket No. 46, at 25, ¶ 108.)  Additionally, he brings a claim for intentional infliction of emotional distress.   Finally, the plaintiff presents a cause of action under 42 U.S.C. § 1985, alleging conspiracy to interfere with his civil rights.  (Docket No. 46, at 25, ¶ 105.)  In their answer to the third amended complaint, defendants deny all ten counts.  (Docket No. 69, at 8-13, ¶¶ 88-125 (dated January 19, 2010); Docket No. 86, at 8-12, ¶¶ 88-125 (dated March 25, 2010).)

## II.  FACTUAL BACKGROUND

The following is the plaintiff's account of the events that bore this lawsuit. During the midnight hours of February 3, 2007, the plaintiff found himself in need of police assistance.  (Docket No. 46, at 14, ¶ 36.)  The plaintiff waived down the first police car that came into view.  (Docket No. 46, at 14, ¶ 37.)  Three officers, allegedly identified as Santos, Medina and Jane Doe C, emerged and, instead of

CIVIL 07-1863 (JA)                          6

coming to his assistance, "brutally assaulted and battered []" him.  (Docket No.

46, at 14, ¶¶ 38-39.)  While this occurred "[s]everal other [p]olice cars . . .

arrived and stood by as the assault on Mr. Moreno [took] place."  (Docket No. 46,

at 15, ¶ 47.)  After the assault, the police "did not take him to a hospital."

(Docket No. 46, at 16, ¶ 50.)

        The following day, the plaintiff admitted himself to a hospital, where he was

found to have incurred, among other things, elevated glucose levels, "multiple

blunt trauma[,]" "uncontrolled diabetes mellitus[,]" and "abrasions in various

parts of his body[.]" (Docket No. 46, at 16, ¶¶ 52-54.)  The plaintiff's pain

continued, and he eventually "sought re-evaluation of his condition[,]" which

discovered "the presence of rib fractures."  (Docket No. 46, at 16, ¶¶ 59-60.)

        The plaintiff alleges that he has suffered, and continues to suffer, "emotional

distress as a result of the assault, consisting, among others, of insomnia,

recurrent thoughts of aggression, and profound anxiety." (Docket No. 46, at 16,

¶ 62.)  He also suffers, and continues to suffer, from physical maladies "in and

about his body and extremities, had broken bones, suffered pain therefrom . . .

suffered physical handicaps . . .  these injuries being either permanent or

continuing in nature . . . . " (Docket No. 46, at 17, ¶ 64.)  The plaintiff has also

sought psychiatric treatment.  (Docket No. 46, at 17, ¶ 63.)

CIVIL 07-1863 (JA)                           7

The plaintiff has since "given information to the Police of Puerto Rico regarding th[e] incident . . . . " (Docket No. 46, at 18, ¶ 69.)  At the Precinct, Morales allegedly "refused to take the report or incident" and sent the plaintiff to another Precinct.  (Docket No. 46, at 18, ¶ 71.)  After "several" more such instances, "Marrero, Bruno [and] Rivera . . . were allowed to interrogate [the plaintiff] and were also allowed to take photographs of the physical injuries . . . . (Docket No. 46, at 18, ¶¶ 72-73.)  The plaintiff "fear[ed] for his safety" in this environment, and has since "request[ed] that any further involvement of his [case] be conducted outside of any police-controlled environments." (Docket No. 46, at 18-19, ¶ 74.)  The police subsequently dropped the investigation, citing the plaintiff's "lack of cooperation."  (Docket No. 46, at 20, ¶ 82.)

III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Meléndez v. Autogermana, Inc., 622 F.3d 46, 49 (1st Cir. 2010).  The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has properly supported

CIVIL 07-1863 (JA)                              8

[its] motion for summary judgment, the burden shifts to the nonmoving party,

with respect to each issue on which [it] has the burden of proof, to demonstrate

that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v.

Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)); Cruz-Claudio v. García

Trucking Serv., Inc., 639 F. Supp. 2d 198, 203 (D.P.R. 2009.)

　　　"[T]he mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v. Xerox Corp.,

294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit

Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996))

("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to

defeat summary judgment.")

> An issue is "genuine" if the evidence of record permits a
> rationale factfinder to resolve it in favor of either party.
> See Medina-Murioz v. R.J. Reynolds Tobacco Co., 896
> F.2d 5, 8 (1st Cir. 1990). A fact is "material" if its
> existence or nonexistence has the potential to change the
> outcome of the suit. See Martínez v. Colón, 54 F.3d 980,
> 984 (1st Cir. 1995).

Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5-6 (1st Cir. 2010).

CIVIL 07-1863 (JA)                              9


The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record."  Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Carmona-Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez-Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

IV.  ANALYSIS

The defendants argue several points in the motion for summary judgment. First, they claim that the plaintiff's Fourteenth Amendment claim should be dismissed, since all claims under 42 U.S.C. § 1983 should be brought under the Fourth Amendment.  Next, they argue that plaintiff's 42 U.S.C. § 1985 claim should be dismissed, as section 1985 applies only to federal officers.  The defendants contest several of the plaintiff's section 1983 claims, including failure

CIVIL 07-1863 (JA)                    10

to intervene, conspiracy, supervisor liability and false arrest.   Finally, the defendants raise the affirmative defense of qualified immunity.   I address each in turn.

## A.  Fourteenth Amendment Claim

The defendants argue that the plaintiff's claims under the Fourteenth Amendment should be dismissed.   They cite Eleventh Circuit precedent that all "excessive force" claims against law enforcement officers "should be analyzed under the Fourth Amendment . . . . " (Docket No. 147, at 17 (quoting Carr v. Tatangelo, 338 F.3d 1259, 1267 n.15 (11th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989))).

"The Supreme Court has held that 'because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically-intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. at 395, cited in Cruz-Acevedo v. Toledo-Dávila, 660 F. Supp. 2d 205, 215 (D.P.R. 2009).   Moreover, the First Circuit has rejected alleged deprivations of substantive due process rights under the Fourteenth Amendment based either on excessive force or on malicious prosecution.   See Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51-53 (1st Cir. 2005); Oquendo-Rivera v. Toledo, 736 F. Supp. 2d 434, 439 (D.P.R. 2010).

CIVIL 07-1863 (JA)                    11

Therefore, the defendants' motion to dismiss Count II of the plaintiff's complaint is GRANTED.

### B.  42 U.S.C. § 1985 Claim

The defendants argue that the plaintiff's section 1985 claims are without merit.  Their claim is premised on the argument that "§ 1985 only applies to federal officers," and as such, the claim is moot.  (Docket No. 147, at 18.)

The plaintiff does not highlight which of the three provisions in 42 U.S.C. § 1985 he claims were violated.  However, two are plainly inapplicable.  Title 42 U.S.C. § 1985(1) protects police officers from conspiracy with the goal of frustrating their duties; Title 42 U.S.C. § 1985(2) protects parties and witnesses from conspiracies hoping to prevent them from testifying in federal court.  See Rivera-Sánchez v. Autoridad de Energía Eléctrica, 360 F. Supp. 2d 302, 312 (D. P.R. 2005).  Title 42 U.S.C. § 1985(3) protects attempts at depriving a citizen of their civil rights; because this is the only section applicable to the case before me, I proceed in analyzing 42 U.S.C. 1985(3).

Section 1985(3) prohibits persons from conspiring to deprive any person, or any class of persons, of their constitutional rights.  The First Circuit requires that a claim under section 1985(3) contain four elements:  "First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an

CIVIL 07-1863 (JA)                    12

overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

"Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end." Rolón v. Rafael Rosario & Assocs., Inc., 450 F. Supp. 2d 153, 159 (D.P.R. 2006).  In alleging a section 1985(3) conspiracy, a plaintiff is "require[d] [to provide] at least minimum factual support of the existence of a conspiracy." Francis-Sobel v. Univ. of Me., 597 F.2d 15, 17 (1st Cir. 1979).  "Similarly, a dismissal is warranted should the complaint fail to elaborate nor substantiate bald claims" of conspiracy between parties.  Rolón v. Rafael Rosario & Assocs., Inc., 450 F. Supp. 2d at 159-60 (citing Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)).  Thus, a plaintiff is required to present some specificity in its claims. "The failure to allege a conspiracy" with sufficient particularity "defeats a cause of action under § 1985(3)." Rolón v. Rafael Rosario & Assocs., Inc., 450 F. Supp. 2d at 160 (citing Ochoa Realty Corp. v. Faria, 634 F. Supp. 723, 726 (D.P.R. 1986).

The plaintiff fails to allege his claims of conspiracy with any particularity. His only reference to his conspiracy claim in his opposition to summary judgment alleges:  "[i]nsofar the conspiracy allegation [sic], there can be no doubt that

CIVIL 07-1863 (JA)                    13

there was a 'meeting of the minds' between Santos and Medina, who directly

assaulted, in tandem, Mr. Moreno."  (Docket No. 152, at 7-8.)  No facts were

asserted in this motion, nor were any alleged in any of plaintiff's complaints.

Even should such particularity exist, the plaintiff does not illustrate what

class received the discriminatory animus.  In order to prevail, the plaintiff must

present evidence that "(1) some class-based animus (usually racial) lay behind

the conspirators' action, and (2) that the conspiracy was aimed at interfering with

protected rights."  Burns v. State Police Ass'n of Mass., 230 F.3d 8, 12 (1st Cir.

2000).  "[The plaintiff] has not alleged with any particularity the overt acts

engaged in by the police officers.  Instead, [the plaintiff's] assertions were

conclusory and vague, and did not establish the existence of an agreement among

the defendants to deprive [the plaintiff] of his constitutional rights."  Thomas v.

Roach, 165 F.3d 137, 147 (2d Cir. 1999).  Because the plaintiff proffers no

evidentiary support, nor even factual allegations that would infer conspiracy,

summary judgment is GRANTED as to the plaintiff's section 1985 claims.

### C.  42 U.S.C. § 1983 Claims

#### i.  Standard

"The essential elements of a claim under 42 U.S.C. § 1983 are (1) that the

defendant acted 'under color of state law' and (2) that the defendant's conduct

worked a denial of rights secured by the Constitution or by federal law."

CIVIL 07-1863 (JA)                          14

González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d 125, 128 (D.P.R. 2010) (citing Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204, 209 (D.P.R. 2001)).  A defendant is considered to act "under color of state law" if his conduct occurs in the course of performing an actual or apparent duty of his office or if his conduct is such that he could not have acted in such a way but for the authority of his office.  Martínez v. Colón, 54 F.3d 980, 986 (1st Cir. 1995).  Whether a police officer acts "under color of state law" depends on the nature and the circumstances under which the officer's conduct takes place and the relationship that conduct has to his official duties.  Id. at 986.  Thus, a person acts under color of state law whenever he purports to act in an official capacity or to exercise official responsibilities and effectively "abuses the position given to him by the state."  Martínez v. Colón, 54 F.3d at 986 (quoting West v. Atkins, 487 U.S. 42, 50 (1988)); see also González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d at 128.

ii. False Arrest

The defendants claim that the plaintiff has failed to state a cause of action for false arrest.  Essentially, they argue that because the plaintiff was never placed *under* arrest, he was not falsely arrested.  Moreover, "the Complaint only shows that the police officers assaulted Moreno and then left." (Docket No. 147, at 7.)

CIVIL 07-1863 (JA)                              15

        This is a gross misstatement of the law.  False arrest is not measured by whether the police physically arrested the plaintiff, but whether the plaintiff felt his freedom was restricted.  "The elements of [a false arrest] claim are:  (1) intentional restriction of a person's freedom of movement, (2) that the detained person be conscious of the detention and that he or she not have consented, and (3) that the detention cause damages."  Segarra Jiménez v. Banco Popular, Inc., 421 F. Supp. 2d 452, 461 (D.P.R. 2006) (citing Castro Cotto v. Tiendas Pitusa, 159 D.P.R. 650, 656 (2003), 2003 TSPR 101, p. 3, 2003 WL 21355210).  The following portion of the plaintiff's deposition is helpful in determining whether he felt his freedom was restricted:

> Q:    Alright.   So, they were not holding you, or restricting your movement?
> A:    In the fact of, what, before the beating, or after the beating?
> Q:    While they were beating you.
> A:    No, I couldn't go anywhere, and I was there.
> Q:    So, my question, were they holding you down?
> A:    No, not at all.  They told me to get on the sidewalk, I got on the sidewalk, or he did [sic].  I was already getting hit, you know, and I didn't want to keep getting hit, but obviously, with, they were having fun.
> Q:    Did you try at some point, try to run away from them?
> A:    No, sir.
> Q:    So, sir, if they not [sic] holding you down, or grabbing you, why would you not run away?
> A:    Why would I run away?
> Q:    Why wouldn't you?

CIVIL 07-1863 (JA)                          16

> A:     I'm not used to running away from authority, like
>        that.

(Docket No. 148-1, at 9:13-10:7.)

The plaintiff did not feel he was free to leave.  Moreover, his apprehension of leaving was reasonable.  Finally, this restriction of freedom was intentional. The defendants' motion to dismiss the plaintiff's false arrest claim is DENIED.

### iii.  Failure to Investigate

The defendants also allege that the plaintiff has failed to establish a cause of action for his failure to investigate claim.  The defendants point to "one major flaw" in the plaintiff's claim:   that plaintiff "failed to identify under which amendment to the Constitution of the United States his failure to investigate claim has been recognized." (Docket No. 147, at 8.)  Instead of explicitly identifying the Constitutional provision violated, the plaintiff is allegedly "putting his hand inside the constitutional basket and hoping he finds at the bottom of the basket a cognizable right to an investigation under the constitution [sic] of the United States."   (Docket No. 147, at 8.)   The defendant finally argues that "[i]t is absolutely clear from the face of the complaint that [the plaintiff] is neither being investigated, threatened with a criminal investigation, or being prosecuted." (Docket No. 147, at 9.)

The plaintiff submits the following factual allegations in support of his claim. According to the plaintiff, "[defendant Marrero] only interviewed [the plaintiff] on

CIVIL 07-1863 (JA)                    17

February 5th, 2007 - she did nothing else[,] . . . [d]efendant Rivera stated: 'I

was a part of the initial investigation of the incident Mr. Moreno was involved

[in][,]'" and "[d]efendant Bruno interviewed [the plaintiff] once and issued a

citation that was answered by [defense counsel] directly to [defendant] Toledo."

(Docket No. 152, at 12.)  The plaintiff then concludes that "[i]n accordance with

the above . . . it can be inferred that no police officer that was on duty that night

was interviewed by Marrero, Rivera nor Bruno."  (Docket No. 152, at 12.)  This

is sufficient to conclude, when juxtaposed against the defendants' failure to

provide a counterfactual narrative, that a genuine issue of fact material exists to

Count IV of the plaintiff's claim.  Therefore, the defendants' motion to dismiss

Count IV is DENIED.

iv.  Supervisor Liability

The defendants also submit that the plaintiff's supervisor liability claims are

without merit.  They allege that the plaintiff "does not state any factual allegations

in support of such naked assertions."  (Docket No. 147, at 11.)  Rather, the

plaintiff's claims that Toledo and Márquez authorized, implicitly or explicitly, the

degree of force used on the plaintiff, have no evidentiary support.  As there is no

*respondeat superior* in section 1983 claims, any supervisor liability must be borne

of his or her own acts or omissions, "either through the supervisor's direct

participation in the unconstitutional conduct, or 'where (1) the behavior of [his]

CIVIL 07-1863 (JA)                              18

subordinates results in a constitutional violation and (2) the [supervisor's] action

or inaction [are] "affirmatively link[ed]" to the behavior in the sense that it could

be characterized as "supervisory encouragement, condonation or acquiescence"

or "gross negligence [. . .] amounting to deliberate indifference."'" González-

Pérez v. Dávila, 680 F. Supp. 2d 347, 354 (D.P.R. 2009) (quoting Whitfield v.

Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005)).

     The plaintiff's opposition to this motion suggests that the defendants'

negligent keeping of paperwork is cause for an "infer[ence] that there is a

negligent and lax attitude towards incidents of misconduct." (Docket No. 152, at

8.)  Specifically, defendant Santos has had several allegations of misconduct

raised against him, and yet, "[t]here is nothing in Santos' misconduct file about

said cases." (Docket No. 152, at 8.)  The plaintiff also alleges that defendant

Márquez failed to properly process complaints up the chain of command.

Allegedly, the plaintiff himself informed Márquez of a "grave offense[,]" to which

Márquez "washed his hands of any responsibility." (Docket No. 152, at 9-10.)

The plaintiff provides no evidentiary support for this alleged abdication of duty,

but nevertheless concludes that a reasonable jury could find that Márquez

"violated his responsibility as commander of the precinct, and his responsibility

towards the citizenry." (Docket No. 152, at 10.)

CIVIL 07-1863 (JA)                    19

The defendants argue that summary judgment is proper on this count because the plaintiff fails to provide any evidence of any direct involvement by Toledo or Márquez that would make them personally liable under section 1983. The plaintiff has not shown the requisite "affirmative link" between the street-level conduct and the supervisory action or inaction.  And while this affirmative link can be proven by evidence of a history of widespread abuse sufficient to alert the supervisors, see Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999), isolated incidents are not sufficient.  No facts have been pled that indicate that these acts or omissions went sufficiently up the chain of command to put Toledo on notice.  Therefore, the supervisory liability claim against Toledo is DISMISSED.  As the officer in charge of Medina's precinct, it is plausible that Márquez should have had notice, however.  "Actual knowledge of the offending behavior is not required, only that the supervisor 'would have known of it but for his deliberate indifference or willful blindness.'" González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d at 129 (quoting Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994)).  The plaintiff has created a genuine issue of fact in Márquez' alleged knowledge of the plaintiff's claim, presented by plaintiff himself.  Therefore, the motion to dismiss the supervisory claim against defendant Márquez is DENIED.

v.  Failure to State a Claim

CIVIL 07-1863 (JA)                    20

The defendants argue that the plaintiff has failed to state an actionable claim under 42 U.S.C. § 1983.  (Docket No. 147, at 4.)  "Toledo, Márquez, Rivera, Bruno, and Marrero submit that [none] of them have deprived plaintiff of any of his constitutional rights.  In fact, plaintiff does not even allege in the complaint that they were involved and/or present during his alleged assault."  (Docket No. 147, at 5.)  Moreover, the defendants allege that the plaintiff was uncooperative in his own investigation.  "Plaintiff's lack of cooperation and the interference by his Attorney . . . are the culprits of the investigatory defendants' failure to achieve the results that [the] Plaintiff was hoping for when he filed his criminal complaint."  (Docket No. 147, at 6.)

"Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person."  Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  These claims are analyzed under an objective reasonableness standard, and as such "an officer's subjective 'intent or motivation'" is not considered.  Raiche v. Pietroski, 623 F.3d at 36 (citing Graham v. Connor, 490 U.S. at 394-95).  An officer's conduct must also shock the conscience.  "In order to 'shock the contemporary conscience,' state action must be 'egregious' and outrageous.'"  Meléndez-García v. Sánchez, 629 F.3d 25, 37 (1st Cir. 2010) (quoting Rivera v. Rhode Island, 402 F.3d 27, 36 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  This is a sliding standard, where

CIVIL 07-1863 (JA)                    21

reflexive reactions are analyzed differently from reflective actions.  "'In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.'" Meléndez-García v. Sánchez, 629 F.3d at 37 (quoting Rivera v. Rhode Island, 402 F.3d at 36 (quoting County of Sacramento v. Lewis, 523 U.S. at 851-52).  Satisfying this "shock the conscience" standard is difficult, as it requires "stunning evidence" of "'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'"  J.R. v. Gloria, 593 F.3d 73, 79 (1st Cir. 2010) (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005)).

I find that the plaintiff pleaded sufficient facts against Medina.  As stated, the plaintiff alleges that Medina and other officers began assaulting him without provocation.  In his deposition, Officer Medina described his involvement in that same event as "spen[ding] two or three minutes in [his] area[, and] while [he] was in the area where the intervention took place, [he] did not see anyone assaulting and/or humiliating the individual."  (Docket No. 148-7, at 2, ¶ 5.) Taken the dispute in the light most favorable to the plaintiff, Medina's conduct is shocking, and would be in violation of section 1983.  Because there is such a wide gulf between the plaintiff and Medina's recollection of events, there is a genuine

CIVIL 07-1863 (JA)                    22

issue as to whether this defendant assaulted the plaintiff, and as such, the defendants' motion for summary judgment as to defendant Medina is DENIED.

I do not find that the plaintiff has plead sufficient facts against supervisor Toledo.  As discussed, the plaintiff does not allege any facts that indict Toledo's direct involvement in this case, either through his acts or omissions.  As such, the defendants' motion for summary judgment on the charge against defendant Toledo is GRANTED.  However, I find that the plaintiff has pled sufficient facts against Márquez.  The plaintiff does manage to establish a genuine issue against Márquez and, if the plaintiff's view were taken as true, his conduct, intentional failure to investigate this claim and similar cases like it,  does rise to the level of egregious conduct necessary for section 1983 purposes.   Therefore, the defendants' motion for summary judgment on the count against defendant Márquez is DENIED.

Finally, the plaintiff has not plead sufficient facts against the "investigatory officers."  If the plaintiff's facts are taken as true, the worst that can be said of defendants' Marrero, Rivera and Bruno is that they failed to mount a thorough investigation of the plaintiff's claim.  The plaintiff concedes that all three, in one manner or another, investigated the plaintiff's claims.  Defendant Marrero interviewed the plaintiff two days after the events giving rise to this complaint; Rivera claims that he was part of the initial investigation; finally, defendant Bruno

CIVIL 07-1863 (JA)                    23

interviewed Moreno and issued a citation in the matter.  (Docket No. 152, at 12.)

The plaintiff alleges that all three "were also allowed to take photographs of the

physical injuries [the plaintiff] sustained as a result of the aggression."  (Docket

No. 46, at 18, ¶ 73.)  Rather, he concludes that they did not do so as thoroughly

as he would have preferred, and this brevity is evidence of an "unspoken . . .

silent[] participat[ion] . . . to violate the citizenry's civil rights."  (Docket No. 152,

at 13.)  But the plaintiff does not support that conclusion with any evidence as to

Marrero and Bruno, and on the evidence before me, no evidence of "shocking"

conduct by Rivera.  Therefore, the conduct of defendants Marrero, Rivera and

Bruno is not "shocking" for section 1983 purposes.  The defendants' motion for

summary judgment as to defendants Marrero, Rivera and Bruno is GRANTED.

vi.  Conspiracy

The defendants argue that the plaintiff's conspiracy claims under section

1983 should be dismissed.  They point to the alleged lack of evidence in support.

"[T]he third amended complaint is devoid of any single factual allegation that

would seem to support such a conspiratorial plot in part [sic] of the defendants

that assaulted him."  (Docket No. 147, at 20.)

"A section 1983 conspiracy claim is 'a combination of two or more persons

acting in concert to commit an unlawful act, or to commit a lawful act by unlawful

means, the principal element of which is an agreement between the parties to

CIVIL 07-1863 (JA)                    24

inflict a wrong against or injury upon another, and an overt act that results in damages.'" Oquendo-Rivera v. Toledo, 736 F. Supp. 2d at 441 (quoting Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)).  "A plaintiff must establish 'not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Oquendo-Rivera v. Toledo, 736 F. Supp. 2d at 441 (quoting Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)).

The plaintiff concludes, without support, that he has "clearly shown a meeting of the minds between [defendants] Santos and Medina in their beating of plaintiff in violation of the right to be free from arrest . . . [t]hese are clear straightforward overt acts in furtherance of the conspiracy to violate [the plaintiff's] civil rights." (Docket No. 152, at 14-15.)  I find that the plaintiff has failed to meet his burden of showing an agreement between defendants' Santos and Medina.  Looking through all his pleadings, I could not find any alleged facts that indicate or would seem to indicate that there was any preparatory intention to act in concert, either explicitly or implicitly.  Therefore, the defendants' motion for summary judgment on Count V is GRANTED.

### D.  Puerto Rico Law 1802

The defendants assert that the plaintiff has failed to establish a claim under Puerto Rico Law 1802.  (Docket No. 147, at 27-28.)  Article 1802 of the Puerto Rico Civil Code, which governs tort liability in Puerto Rico, states:

CIVIL 07-1863 (JA)                    25

> A person who by an act or omission causes damage to
> another through fault or negligence shall be obliged to
> repair the damage so done.  Concurrent imprudence of
> the party aggrieved does not exempt from liability, but
> entails a reduction of the indemnity.

P.R. Laws Ann. tit. 31, § 5141 (1990).

Thus, a person is labile for damages provided that plaintiff establishes: "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them."  Irvine v. Murad Skin Research Lab., Inc., 194 F.3d 313, 321 (1st Cir. 1999) (citing De Jesús-Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998); Marshall v. Pérez-Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987)); see Wojciechowicz v. United States, 582 F.3d 57, 66 (1st Cir. 2009).  I have already decided that four defendants are entitled to summary judgment while two are not entitled to summary judgment on several of the plaintiff's claims.  "As a result, [as to Medina and Márquez] the court is not in a position to dismiss any pendent state law claims at the moment . . . . "  González-Pérez v. Dávila, 680 F. Supp. 2d at 356.  Therefore, the defendants' motion for summary judgment on the plaintiff's Article 1802 claim is DENIED as to them.  Since the federal claims have been dismissed as to Toledo, Marrero, Rivera and Bruno, the supplemental claim under Article 1802 will also be dismissed.

E.  Qualified Immunity

CIVIL 07-1863 (JA)                    26

Finally, the defendants assert they are protected by qualified immunity. Qualified immunity is asserted for the "investigative defendants" and the supervisory defendants.  (Docket No. 147, at 24-27.)  As defendants Marrero, Rivera, Bruno and Toledo have properly been dismissed, I will only consider whether Márquez or Medina are entitled to qualified immunity.

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, '[i]nsofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Raiche v. Pietroski, 623 F.3d at 35 (quoting Pearson v. Callahan, 555 U.S. 223, [129 S. Ct. 808, 815] (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  This policy is justified by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987); see also 13D The Late Charles Alan Wright, et al., Federal Practice and Procedure § 3573.3 (3d ed.) (the Supreme Court "has embraced qualified immunity in recognition that a government actor should be shielded from liability if he acted in good faith.")

The First Circuit applies a "two-part test to determine whether qualified immunity shields a government official from liability." Sánchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir. 2009) (citing Moldonado v. Fontanés, 568 F.3d 263,

CIVIL 07-1863 (JA)                    27

268-69 (1st Cir. 2009)).   The court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right.  See Fletcher v. Town of Clinton, 196 F.3d 41, 48-49 (1st Cir. 1998); see González-Pérez v. Dávila, 680 F. Supp. 2d at 356. The doctrine of qualified immunity doesn't ask much from its actors; they need only avoid "all but the plainly incompetent" acts "or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  Police officers are entitled to "good faith immunity," allowing even unconstitutional acts "if a reasonable official–based upon the state of the law at the time–would not have known that the act constituted a violation."  13D The Late Charles Alan Wright, et al., Federal Practice and Procedure § 3573.3.

Based upon the facts before me, the plaintiff has sufficiently pled a violation of a constitutional right.  In his deposition he stated:

| | |
|---|---|
| Q: | Who were you involved in a fight[] with? |
| A: | Supposedly the police officer that, didn't show me his badge, and I said that, "This guy cannot be police." |
| Q: | Was it the person that was saying, he was police, after he took your phone? |
| A: | Yes. |
| Q: | Why did you get into a fight with him? |
| A: | I didn't get into a fight.  He hit me. |
| | ... |
| Q: | Which one of the two[] hit you multiple times? |
| A: | The passenger.  I thought I was under arrest. |

CIVIL 07-1863 (JA)                    28

        Q:    Were you arrested?
        A:    No, sir.
        Q:    Were they saying anything, while they hit you?
        A:    The only thing I could hear[] was that[] "You're not
             in New York."  I think, I thought they had me
             [mistaken] for somebody else, . . . they were
             saying things[] that just didn't . . . you know, what
             did I do? . . . What he was saying, really didn't
             pertain to me.

(Docket No. 148-1, at 4:24-5:7, 8:6-8:19.)

     The defendants have not pled any facts that attempt to justify this incident. Looking at the evidence in the light most favorable to the plaintiff, I find that there is a genuine issue regarding whether the defendants acted reasonably in this circumstance.  The remaining plaintiffs, Medina and Marrero, if found liable of their respective allegations, would have stepped outside of the scope of conduct that qualified immunity is designed to protect.  These actions would be intentional, in bad faith, and shocking to the conscience.  Thus, they would not be eligible for the defense of qualified immunity.

         A defendant is entitled to summary judgment on the issue of qualified immunity

               if [he] "adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendant[]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

CIVIL 07-1863 (JA)                    29

 Farid v. Ellen, 593 F.3d 233, 244 (2d Cir. 2010) (quoting Robison v. Via, 821

F.2d 913, 921 (2d Cir. 1987) (quoting Halperin v. Kissinger, 807 F.2d 180, 189

(D.C. Cir. 1986)).  This is not the case.  Therefore, the defendants' motion for

summary judgment on the basis of qualified immunity as to the remaining parties

is DENIED.

V.  Conclusion

For the reasons stated above, the defendants' motion for summary

judgment on the plaintiff's 42 U.S.C. § 1985 claim and 42 U.S.C. § 1983

Fourteenth Amendment claim is GRANTED as to Toledo, Marrero, Rivera and

Bruno.  The plaintiff has failed to plead sufficient facts that a reasonable fact-

finder would conclude that Toledo's conduct in his supervisory capacity "shocked

the conscience" as is required under 42 U.S.C. § 1983.  Similarly, the plaintiff has

failed to produce  evidence of conduct that shocks the conscience by the

"investigatory defendants," Marrero, Rivera and Bruno.  I find that the plaintiff did

plead sufficient facts against both defendants Medina and Márquez.  Therefore,

the motion for summary judgment is DENIED as to Medina and Márquez.

In San Juan, Puerto Rico, this 4th day of March, 2011.

S/ JUSTO ARENAS
Chief United States Magistrate Judge